**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DAVID A. HARPER,**

      **Plaintiff,**

**vs.**                        **Case No. 4:13cv459-MW/CAS**

**THE FLORIDA BAR, et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff has filed an amended complaint, doc. 8, which asserts jurisdiction

pursuant to the civil rights statutes, 42 U.S.C. § 1981, § 1983, and § 1985, as well as

several state law claims. Plaintiff was granted in forma pauperis status, doc. 5, and was

permitted to proceed without requiring payment of the filing fee.

An Order was previously entered on September 18, 2013, explaining the

deficiencies of Plaintiff's original complaint, doc. 1, and providing Plaintiff with an

opportunity to submit a viable amended complaint consistent with the information

provided, or Plaintiff could file a notice of voluntary dismissal. Doc. 5. Prior to filing the

amended complaint, Plaintiff filed a motion for reconsideration of the Order, doc. 6,

which was deemed to be a motion for enlargement of time and was granted on October

8, 2013.  Doc. 7.  The day after that Order was entered, Plaintiff filed the amended complaint, doc. 8.  Thus, the amended complaint as filed has been reviewed.  Because the claims cannot proceed, it is recommended that this case be dismissed for failure to state a claim.

Plaintiff is a former attorney who brings this case pro se.  Doc. 8 at 2.  Plaintiff alleges that he "was deprived of his constitutional rights to life, liberty and property without due process of law and whose license to practice law in Florida and other states was unlawfully suspended, and continues to be unlawfully suspended," depriving Plaintiff's former client, Vera Harper,[1] and her deceased husband's estate, as well as "her household, including David A. Harper," of contract benefits allegedly owed pursuant to a homeowner's insurance policy.  Doc. 8 at 2.

Underlying this case is an action concerning coverage under the homeowners policy issued by United Services Automobile Association (USAA) to Vera Harper and Wilson Clark Harper, husband and wife.  *Id.* at 2.  The complaint was initially filed pro se in February 2005 in state court in Seminole County, Florida.  *Id.* at 4.  Initially, Judge Simmons was assigned to the case until, according to the amended complaint, it was revealed during a hearing that he had USAA membership.  *Id.*  Judge Dickey took over the case in 2006, but was allegedly disqualified[2] and Judge Alley succeeded him.  *Id.*  Judge Dickey filed a Bar grievance against Plaintiff who, at some unspecified time, began representing Vera Harper in the case.  *Id.* at 2.

_____

[1] Vera Harper is Plaintiff's mother.

[2] Plaintiff contends Judge Dickey entered "numerous rulings" which "revealed his bias in favor of the USAA" and Plaintiff filed a motion to disqualify Judge Dickey.  Doc. 8 at 10.

Plaintiff filed several motions to disqualify Judge Alley and despite denying those motions, "Judge Alley finally recused herself in January 2009 and, like her predecessor, filed a" Bar grievance against Plaintiff. *Id.* at 4-5, 13. Prior to Judge Alley's recusal, Plaintiff filed a petition for writ of prohibition with the Court of Appeals which was denied without opinion. *Id.* at 11-12.[3] On January 22, 2009, Judge Alley filed a Bar grievance against Plaintiff as well. *Id.* at 13.[4]

Judge Perry was assigned the case, but after being appointed to the Florida Supreme Court, Judge Simmons again took over the case. *Id.* at 5. During a hearing on June 23, 2010, Judge Simmons recused himself and the case was assigned to Brevard County Judge Robert Wohn, Jr. *Id.* at 5-6. Plaintiff filed two more motions seeking the disqualification of Judge Wohn, both of which were denied. *Id.* at 6. Plaintiff also states that "[n]umerous petitions for extraordinary writs were also denied." *Id.*

The case was eventually assigned to Judge Maxwell after a rotation of civil cases and in May of 2011, Judge Maxwell overruled Plaintiff's objection that venue was proper in Seminole County and not Brevard County. Thereafter, Plaintiff moved for the disqualification of Judge Maxwell which, apparently, was denied. Plaintiff's appeal of

---

[3] Plaintiff filed a second petition for writ of prohibition which was also denied. Doc. 8 at 13.

[4] The first grievance filed by Judge Dickey was allegedly found to be "without merit" but probable cause was found as to the second grievance filed by Judge Alley. Doc. 8 at 14. Judge Hawley was assigned as referee in the case and Plaintiff states he "filed three motions for his disqualification, the last of which he granted." *Id.* at 15. The case was reassigned to Judge Pegg, and Plaintiff contends that because the Chief Justice of the Florida Supreme Court was required to appoint the successor, the "entire Florida disciplinary proceeding" was rendered "void ab initio." *Id.* Plaintiff filed a motion to disqualify Judge Pegg in February 2010, which was denied. *Id.* at 15.

the non-final order concerning venue was also, apparently, dismissed. Judge Maxwell eventually granted summary judgment in favor of USAA. *Id.* at 7.

Bar disciplinary proceedings proceeded on the grievance filed against Plaintiff by Judge Alley with Judge Pegg assigned as referee. *Id.* at 15. Plaintiff challenged Judge Pegg's rulings in the disciplinary proceedings and also filed a petition for review in the Florida Supreme Court. Doc. 8 at 16. Plaintiff's request for oral argument was denied, as was his motion for rehearing filed after the Order was entered suspending Plaintiff. Doc. 8 at 17. Plaintiff challenges the format of the Court's Order, as well as other perceived problems in the disciplinary proceedings in Florida, and the reciprocal disciplinary proceedings in Colorado. *Id.* at 18-22. Plaintiff was suspended from the practice of law for 91 days by issuance of an order from the Supreme Court of Florida, entered on August 17, 2011. Doc. 8 at 7; *see also* p. 49. Plaintiff contends his suspension violated the applicable rules and law, to interfere with his rights, and deprived Vera Harper of legal counsel. *Id.* at 19-22.

Plaintiff alleges that the justices of the Florida Supreme Court, the Clerk of the Fifth District Court of Appeal, the Florida Fifth District Court of Appeal, the Seminole County Circuit Court, and judges from the Seminole County Circuit Court, Brevard County Circuit Court, Indian River County Circuit Court, and Martin County Circuit Court made rulings or otherwise took actions "in contravention of the applicable rules and law" and interfered with Plaintiff's rights. *Id.* at 22-25. Plaintiff also seeks to bring suit against a number of other attorneys who were involved in The Florida Bar disciplinary proceedings against Plaintiff, or were involved in the underlying litigation which formed the basis for the disciplinary proceedings against Plaintiff, and against various court

reporters "who participated in the falsifying of official documents for the purpose of obstructing justice and unlawfully interfering with Plaintiff's civil rights and property rights and which act to or attempted to unlawfully influence the case to Plaintiff's detriment . . . ." *Id.* at 25-27. Plaintiff also presents allegations against the Florida Hospital and several doctors, claiming that those Defendants "who were responsible for the medical care of Wilson Harper while he was Hospitalized in Florida Hospital obstructed justice and unlawfully interfered with Plaintiffs' civil rights and property rights" and prevented Wilson Harper "from being discharged from the hospital for the benefit of Defendants and which corruptly altered or concealed documents, or attempted to do so, or caused another person to do so, with the intent to impair the document's integrity or availability for use in an official proceeding . . . ." *Id.* at 27. Plaintiff claims all of the Defendants named in this case "conspired together in an unlawful scheme to deprive Mr. And Mrs. Harper and David A. Harper of their property and their civil rights . . . and have [Plaintiff David Harper] unlawfully suspended from the practice of law . . . ." *Id.* at 28-29.

Plaintiff's count I asserts violations of 42 U.S.C. § 1983 and § 1981 and the Fourteenth Amendment. Doc. 8 at 29-30. Plaintiff contends the "actions taken by the Defendants . . . were taken without legal authority and violated Plaintiff's civil rights . . . ." *Id.* at 31. Count II asserts a conspiracy pursuant to 42 U.S.C. § 1985. *Id.* at 32-33. Count III alleges Fraud when "the Successor Referee was unlawfully acting in [the] Florida disciplinary proceedings," the Florida Supreme Court entered only a one-page Order, and Plaintiff was "fraudulently and unlawfully" suspended from the practice of law. *Id.* at 35-36. Count IV alleges claims under Florida's R.I.C.O. statute and claims the Bar is "an 'enterprise' and engaged in fraudulent activity involving interstate

commerce . . . ." *Id.* at 36-37. Plaintiff also seeks to bring state law claims under the Florida Unfair Insurance Trade Practices Act. *Id.* at 37-39. Plaintiff's sixth claim asserts "civil conspiracy" by the Defendants in assigning the various judges to Plaintiff's case, in entering orders and rulings in cases, and in the Bar disciplinary proceeding. *Id.* at 39-43. Counts VII-VIII are claims against all Defendants under the Federal R.I.C.O. Act by committing unspecified acts of mail and wire fraud, falsifying court documents, engaging in schemes to unlawfully suspend attorneys, and "corrupt the administration of justice" by preventing Plaintiff from exercising his constitutional rights. *Id.* at 43-47.

Plaintiff's amended complaint, doc. 8, remains deficient for many of the same reasons the initial complaint could not proceed. *See* doc. 5. Only four of those reasons need be set forth below.

Plaintiff's claims against the numerous judges and justices cannot proceed because judges are entitled to absolute judicial immunity from damages for actions taken in his or her capacity as a judge, unless the judged acted in the "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 355-357, 98 S.Ct. 1099, 1104-05, 55 L. Ed.2d 331 (1978). Such "immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000), *citing* Stump, 435 U.S. at 356, 98 S.Ct. 1099. In Stump v. Sparkman, the United States Supreme Court set "forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under Section 1983." Simmons v. Conger, 86 F.3d 1080, 1084 (11th Cir. 1996), *citing* Stump, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). "The first part of the test is whether the judge dealt with the plaintiff in a judicial capacity." Simmons, 86 F.3d at

1084-1085, *quoting* Stump, 435 U.S. at 362, 98 S. Ct. at 1107.  If this first part is satisfied, the second part of the test looks at "whether the judge acted in the 'clear absence of all jurisdiction.' "  86 F.3d at 1085; 435 U.S. at 357, 98 S. Ct. at 1105, *quoting* Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351, 20 L. Ed. 646 (1872).  In addition, to the degree Plaintiff seeks injunctive relief in addition to money damages, the judges and justices are entitled to immunity pursuant to the clear language of § 1983.  Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (noting that after § 1983[5] was amended, injunctive relief cannot be granted against a judicial officer).

In this case, Plaintiff's allegations reveal that each of the Defendant judges and justices were acting pursuant to their judicial capacities and had jurisdiction over cases before them.  The only alleged involvement of any of the judges were in presiding over Plaintiff's state insurance claim or in the Bar disciplinary proceeding.  Neither the judges or any justice from the Florida Supreme Court dealt with Plaintiff in a personal capacity outside the performance of the judge's judicial duties.  Because all of the judges and

---

[5] In relevant part, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

42 U.S.C. § 1983 (emphasis added).

justices were acting in their role as judicial officers and had jurisdiction over Plaintiff, the claims against them should be dismissed.

Plaintiff's claims must also be dismissed because they are barred by the *Rooker-Feldman* doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). The *Rooker-Feldman* doctrine is jurisdictional, precluding a loser in state court from challenging a judgment entered in state court, "based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994), *quoted in* Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1330 (11th Cir. 2010). Plaintiff's claims here challenge the state court insurance case submitted by Plaintiff's mother, Vera Harper, and rulings entered throughout that proceeding. Plaintiff cannot complain in this Court about the allegedly biased rulings entered in that case, that judges should have recused themselves before entering orders, and Plaintiff cannot seek relief from the grant of summary judgment entered in that case against Plaintiff, which was upheld by the Fifth District Court of Appeal and the Florida Supreme Court declined to accept jurisdiction. The *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court."[6] Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009).

---

[6] Plaintiff, along with his mother Vera Harper, sought a petition for writ of certiorari in the United States Supreme Court, directed to the Supreme Court of Virginia, but that request was denied on November 28, 2011. Harper v. United Services Automobile Assn., 132 S.Ct. 774 (2011). The Virginia case is also related to this case.

Having lost the Seminole County case in state court, Plaintiff may not seek review in this Court, alleging injury and harm stemming from that case.[7] Plaintiff has had multiple reviews of the underlying case in state court, but this Court cannot do so. Whether pled as a claim for a civil rights violation, fraud, violation of Florida's Unfair Insurance Trade Practices Act, a violation of the Florida R.I.C.O. statute, or the federal R.I.C.O. statute, each of these claims are brought to collaterally challenge the result of the Seminole County case and The Florida Bar disciplinary proceeding. This Court is barred from conducting such review under the *Rooker-Feldman* doctrine.

The third reason for dismissal is because Plaintiff's amended complaint fails to state a claim for conspiracy. Plaintiff may not broadly allege that all Defendants conspired together without specific statements of fact which support the claim. Conclusory, vague, and general allegations of conspiracy justify dismissal of a complaint. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985), *cert. denied* 106 S.Ct. 817 (1986). It is not enough to simply aver that a conspiracy existed. Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984). Plaintiff does not allege specific facts to show that any particular Defendants reached an agreement or understanding to deny Plaintiff's rights or cause him harm. See Bivens Gardens Office Bldg., Inc. v. Barnett Banks Inc., 140 F.3d 898, 912 (11th Cir. 1998) (explaining that a civil conspiracy ordinarily requires "an agreement between two or

---

[7] Plaintiff and Vera Harper filed nine separate appeals with the Fifth District Court of Appeal (cases number 08-3167, 08-3300, 08-3487, 09-198, 099-1196, 09-4128, 09-4428, 10-2289, and 11-2311), all of which stem from the case underlying this action from Seminole County, case number 05-CA-401-15. Plaintiff and Vera Harper submitted seven requests for review from the Florida Supreme Court (case number SC09-1681, SC09-1835, SC10-219, SC10-220, SC10-296, SC10-1926, and SC11-2126), all of which stem from the underlying Seminole County case.

more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff").

Furthermore, Plaintiff does not present a jurisdictional basis for this claim.  If Plaintiff basis his claim for conspiracy under § 1985, he must show: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002), *cited in* White v. School Bd. of Hillsborough Co., 636 F.Supp.2d 1272, 1278 (M.D. Fla. 2007). It must be shown, then, that "the conspirators were motivated by . . . racial, or otherwise class-based, invidiously discriminatory intent." Kearson v. S. Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985), *quoted in* White, 636 F.Supp.2d at 1278-79.  Here, Plaintiff does not present any facts to show that any actions were class based or racially motivated.[8]

Finally, Plaintiff's claim for fraud must be dismissed because under FED. R. CIV. P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Plaintiff has not done so.  The allegations are conclusory and without specific

---

[8] Similarly, Plaintiff fails to state a claim under 42 U.S.C. § 1981 because he does not allege that he has not been able to enjoy all rights and benefits of the laws which are "enjoyed by white citizens," or that his rights to make contracts were impaired due to racial discrimination.  "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999) (citations omitted).  Plaintiff's amended complaint does not contain factual allegations which demonstrate discrimination due to race and, thus, the § 1981 claim must fail.

facts. For example, Plaintiff asserts that records and official documents were falsified, *see* doc. 8 at 26-27, but Plaintiff does not assert any specific false statement or allege how any named court reporter committed the alleged fraud. Even if Plaintiff could amend his complaint to present more specific statements of fact, the claims could not go forward pursuant to the *Rooker-Feldman* doctrine.

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's amended complaint, doc. 8, be **DISMISSED** for failure to state a claim upon which relief may be granted and because this action is barred by the *Rooker-Feldman* doctrine and the numerous judges and justices are entitled to absolute judicial immunity.

**IN CHAMBERS** at Tallahassee, Florida, on October 23, 2013.


S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



**<u>NOTICE TO THE PARTIES</u>**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.